IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

REVEREND WESLEY HOWELL,    :    No. 3:22cv1255
ADMINISTRATOR OF THE ESTATE    :
OF CHRISTOPHER RYAN HOWELL,    :    (Judge Munley)
                Plaintiff    :
                           :
             v.                  :
                           :
CORRECTIONS SECRETARY    :
JOHN WETZEL; SCI-DALLAS    :
SUPERINTENDENT KEVIN RANSOM;    :
SCI-DALLAS CORRECTIONAL    :
OFFICER SEDESKI; SCI-DALLAS    :
CORRECTIONAL OFFICERS JOHN    :
AND JANE DOE'S 1-5; WELL    :
PATH, LLC f/k/a    :
CORRECT CARE SOLUTIONS, LLC;    :
MHM CORRECTIONAL SERVICES,    :
INC., a/k/a MHM a/k/a MHM HEALTH    :
PROFESSIONALS LLC a/k/a MHM    :
CORRECTIONAL SERVICES, LLC    :
and parent company CENTURION    :
HEALTH; ABC CORPORATION;    :
HEALTH CARE PROVIDER    :
NICOLE ASHTON; HEALTH CARE    :
PROVIDER TEMEKA AUSTIN;    :
HEALTH CARE PROVIDER    :
CHARLES REED; HEALTH CARE    :
PROVIDERS JANE/JOHN    :
DOES # 1-10; AND    :
DR. SCOTT PRINCE,    :
                Defendants    :

## MEMORANDUM

Before the court for disposition is Defendant MHM Correctional Services' motion to partially dismiss plaintiff's complaint[1] in this case involving allegations of the improper treatment and eventual suicide of Christopher Ryan Howell in

---

[1] The complaint identifies MHM Correctional Services as "MHM Services, Inc. a/k/a MHM a/k/a MHM Health Professionals LLC a/k/a MHM Correctional Services, LLC *and its parent company* Centurion Health." (Doc. 1, Compl. ¶13).

state prison. The parties have briefed their respective positions, and the matter is ripe for disposition.

**Background[2]**

Plaintiff's decedent, Christopher Ryan Howell ("Howell"), took his own life while imprisoned at the State Correctional Institution-Dallas, Pennsylvania. ("SCI Dallas"). The complaint alleges that at birth, Howell was diagnosed with fetal alcohol syndrome. (Id. ¶ 17). Because of the fetal alcohol syndrome, Howell suffered developmental, cognitive, and behavioral problems. (Id. ¶ 18). He was diagnosed with depression, attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, antisocial personality disorder, as well as impulse control and conduct disorder, for which he took medicines daily. (Id. ¶ 19).

In 2018, Howell pleaded *nolo contendere* to criminal charges of aggravated assault and resisting arrest. (Id. ¶ 23). He was sent to SCI Dallas to serve his sentence. (Id.) The Direct Client Contact Psychological Assessment Report, generated at the time of Howell's incarceration at SCI Dallas, identified him as a suicide risk based upon a clinical interview and a history of prior suicide attempts. (Id. ¶ 25).

---

[2] These brief background facts are derived from plaintiff's complaint. At this stage of the proceedings, the court must accept all factual allegations in the complaint as true. Phillips v. Cnty. of Allegheny, 515 F. 3d 224, 233 (3d Cir. 2008). The court makes no determination, however, as to the ultimate veracity of these assertions.

2

Based upon this assessment, SCI Dallas concluded that Howell needed mental health care and listed him for "mental health services." (Id. 26). When Howell was incarcerated at SCI Dallas, the prison had information that he had attempted suicide by hanging in 2011 during a previous period of incarceration. (Id. ¶ 27).

For a short period of time, Howell was transferred from SCI Dallas to the State Correctional Institution at Frackville, Pennsylvania ("SCI Frackville"). (Id. ¶ 28). While at SCI Frackville, shortly before being transferred back to SCI Dallas, Howell was admitted for psychiatric observation (suicide watch) due to "exhibiting an instability of mental health with a risk of self-harm and possible altered thought processes." (Id.)

On or about May 11, 2020, after being returned to SCI Dallas, Howell was transferred to the Restricted Housing Unit ("RHU"), or solitary confinement, due to conduct arising from and related to his mental health issues. (Id. ¶ 29). The RHU cells are small and dark. They are filthy dirty, with stains on the walls, dirt everywhere, no windows and minimal air circulation. (Id. ¶ 33). The water that comes out of the sink and showers is rust colored and undrinkable. (Id.)

Prisoners in RHU were forced to stay in their cells alone and isolated for 23 to 24 hours a day. (Id. ¶ 34). They were exposed to extreme deprivations of

social interaction and environmental stimulation, abusive staff and inadequate to non-existent mental health care. (Id.)

Prison officials knew the conditions in RHU were extremely harsh and caused psychological harm. (Id. ¶ 32). Staying in the RHU also exacerbated the existing mental health issues of the inmates. (Id.) In fact, the majority of suicides and suicide attempts and other acts of self-harm at SCI Dallas occurred in the RHU. (Id.)

Howell remained in RHU from May 2020 until June 2020. (Id. ¶ 30). He returned to RHU in July 2020, and remained there until he committed suicide on or around August 15, 2020. (Id.) While he was in RHU defendants failed to provide Howell with adequate medications for his mental health issues, including depression and anxiety. (Id. ¶ 37). They also failed to provide mental health therapy/counseling or psychiatric care. (Id.) Howell began to spiral out of control and became very agitated. (Id.) He engaged in bouts of screaming and loud crying. (Id.) Howell also suffered untreated seizures while in the RHU. (Id. ¶ 40).

Despite pleas for help, plaintiff hung himself in his cell. (Id. ¶ 47). He was pronounced dead on August 15, 2020. (Id. ¶ 51). Based upon these facts, plaintiff, Howell's estate, filed the instant civil rights complaint. The defendants are: Pennsylvania Department of Corrections Secretary John Wetzel; SCI Dallas Superintendent Kevin Ransom; SCI Dallas Correctional Officer Sedenski; SCI

Dallas Correctional Officers John and Jane Doe 1-5; Well Path, LLC f/n/a Correct Care Solutions, LLC; MHM Services, Inc. a/k/a MHM a/k/a MHM Health Professionals LLC a/k/ MHM Correctional Services, LLC and parent company Centurion Health hereinafter ("MHM"); Health Care Provider Nicole Ashton; Health Care Provider Temeka Austin; Health Care Provider Charles Reed; Health Care Provider Jane/John Doe 1-10; and Dr. Scott Prince.[3] The complaint contains seven (7) causes of action. The first four allege violation of the Eighth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983, and the remaining three counts are state law causes of action. The counts are as follows:

    Count I – Deliberate Indifference To Known Risk of Suicide;

    Count II – Inadequate Medical Care;

    Count III – Inhuman Conditions of Confinement;

    Count IV – Supervisory Liability;

    Count V – Corporate Negligence/Gross Negligence;

    Count VI - Negligence/Vicarious Liability; and

    Count VII- Wrongful Death.

---

[3] Originally, plaintiff also sued SCI Dallas Chief Psychologist Paul Bach, but he has since been voluntarily dismissed from the case. (Docs. 30 & 31).

In response to the complaint, Defendant MHM filed a motion for partial dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The parties have briefed their respective positions and the motion is ripe for decision.

**Jurisdiction**

As plaintiff brings suit pursuant to 42 U.S.C. § 1983, the court has federal question jurisdiction. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Legal Standard**

Defendant filed its motion to partially dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the

complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35. In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," a standard which "does not require detailed factual allegations," but a plaintiff must make "a showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level." McTernan v. N.Y.C., 564 F.3d 636, 646 (3d Cir. 2009) (citations and internal quotations and quotation marks omitted). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Such "facial plausibility" exists "when the plaintiff

7

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted). "Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (quoting Twombly, 550 U.S. at 555).

The Supreme Court has counseled that a court examining a motion to dismiss should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Next, the court should make a context-specific inquiry into the "factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." Id. at 681.

**Discussion**

Defendant MHM's motion raises three primary issues. The court will address each separately.

**I. Dismissal of Count I**

Count I of plaintiff's complaint alleges a cause of action for deliberate indifference to known risk of suicide. (Doc. 1, Compl. ¶¶ 92-97). Defendant

MHM seeks dismissal of this count arguing that plaintiff has alleged insufficient facts to support such a cause of action. After a careful review, the court disagrees.

To establish a claim for deliberate indifference to known risk of suicide, plaintiff must establish the following three elements:

1) the prison detainee had a particular vulnerability to suicide; 2) the custodial officers knew or should have known of the vulnerability; and 3) those officers acted with reckless indifference to the detainee's particular vulnerability. Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991). To demonstrate that a detainee had a particular vulnerability to suicide, plaintiff must establish "a strong likelihood, rather than a mere possibility, that self-inflicted harm [would] occur." Woloszyn v. Cnty. of Lawrence, 396 F.3d 314, 320 (3d Cir. 2005) (internal quotation marks and citation omitted). The Third Circuit, however, does not "demand a heightened showing at the pleading stage" regarding vulnerability to suicide. Palakovic v. Wetzel, 854 F.3d 209, 230 (3d Cir. 2017). "A particular individual's vulnerability to suicide must be assessed based on the totality of the facts presented." Id.

With regard to these elements plaintiff alleges that the defendants "knew or should have known that [Howell] was particularly vulnerable to suicide and that there was a strong likelihood that he would attempt suicide in the RHU, and

notwithstanding this knowledge of a significant risk to Decedent's health and safety, they were deliberately indifferent by failing to take any action or precaution to prevent him from hanging himself, such as placing him on suicide watch or providing him his prescribed medication and/or therapy and counseling or placing him in housing that would not exacerbate his severe mental health issues and vulnerability to suicide." (Id. ¶ 93).

Defendant MHM argues that the last time plaintiff was diagnosed with suicidal ideation was at a different prison three (3) months or ninety (90) days before his death. According to MHM, the passing of ninety (90) days between when Howell was last diagnosed as suicidal and his suicide is too much time for him to have been considered vulnerable to suicide at the time of his death.

In support of its position, MHM cites to a nonprecedential opinion from the Third Circuit Court of Appeals, Baez v. Lancaster Cnty., 487 F. App'x 30 (3d Cir. 2012). Defendant argues that this case indicates that suicidal ideation as recent as 18 days prior to a suicide did not support a finding of a "strong likelihood" of suicide. Similarly, MHM cites to Hinton v. United States, No. 4:14cv854, 2015 WL 737584 (M.D. Pa. Feb. 20, 2015). In this case, the decedent had had three prior suicide attempts approximately ten years before he killed himself while incarcerated in a federal prison. The court noted that he had been on antidepressant medicine until six years prior to his suicide. Id. *5. No facts were

alleged that the decedent demonstrated suicidal ideation following the discontinuation of the medicine. Thus, the court found the allegations did not present a vulnerability to suicide after the medicine was discontinued six years prior. Id. *6.

These cases demonstrate that the issue of vulnerability to suicide is very fact sensitive. Here, the complaint alleges that Howell was housed at SCI-Dallas and then transferred for a brief period to SCI Frackville. While at SCI Frackville shortly before being transferred back to SCI Dallas, Howell was on suicide watch. (Doc. 1, ¶ 28). Then after being returned to SCI Dallas, the prison put him in RHU or solitary confinement for conduct arising out of and related to his mental health issues. (Id. ¶ 29). He was in RHU for a month from May to June 2020, and then transferred back to RHU in July 2020, where he remained until he died in August 2020. (Id. ¶ 30).

Per the complaint, a week prior to Howell's suicide, he was mentally decompressing. His depression increased, and he constantly thought about sexual abuse he had suffered as a child. He cried and paced his cell. Additionally, he suffered racing thoughts, had trouble sleeping and demonstrated a lack of interest in leaving his cell the one hour per day permitted. (Id. ¶ 38). Collectively, the facts as pled, including the rapid decompression a week prior to the suicide, the fact that Howell suffered severe mental illness, had a number of

11

prior suicide attempts, and was on suicide watch at SCI Frackville, distinguish this case from the facts of the cases cited by Defendant MHM and support a finding that Howell had a particular vulnerability to suicide. Dismissal of this cause of action on the basis that plaintiff has pled insufficient facts to establish a particular vulnerability to suicide is thus inappropriate.

## II. Defendant MHM's Policies and Practices

As noted plaintiff is pursuing an Eighth Amendment vulnerability to suicide claim against MHM. Defendant MHM, a private entity, is alleged to have had a contract with the Pennsylvania Department of Corrections, SCI Dallas, and/or Wellpath, Inc. "to hire, train and supervise psychiatric and/or medical personnel and to establish related procedures and policies for SCI Dallas, and to provide constitutionally adequate medical/psychiatric care to persons incarcerated at SCI Dallas, and to protect those inmates from suicide[.]" (Doc. 1, ¶ 13). For a private corporation contracting with the state to be liable under section 1983, plaintiff must demonstrate that an official corporate policy or custom resulted in the alleged constitutional violation. Natale v. Camden Cnty. Corr. Fac., 318 F.3d 575, 583-84 (3d Cir. 2003).

With regard to corporate policy or custom plaintiff's complaint alleges: "Defendant . . . MHM . . . authorized, enforced, [and] encouraged the policy, practice and/or custom of warehousing suicidal, mentally ill inmates in solitary

confinement in the RHU, and the policy/practice/custom of limiting/denying suicidal, mentally ill inmates in the RHU access to adequate medicines, and care and treatment of their mental health issues, including denying them access to psychologist/psychiatrist." (Doc. 1, Compl. ¶ 72). Further, MHM "approv[ed], condon[ed], [and] acquiesc[ed]" in these policies and practices. (Id. ¶ 75).

To establish an Eighth Amendment vulnerability to suicide claim against a non-prison official such as Defendant MHM, plaintiff must demonstrate that the policy changes proposed would have put the custodial officials on notice of the decedent's propensity to commit suicide, and that the failure to implement appropriate policies amounted to deliberate indifference. Schuenemann v. United States v. United States, No. 05-2565, 2006 WL 408404, *3 n.5 (3d Cir. 2006). Defendant MHM argues that Howell did not exhibit a particular vulnerability to suicide prior to his death. According to defendant, any measures to change policies and practices related to inmates vulnerable to suicide would not have had any impact on him. Therefore Defendant MHM argues that it should be dismissed. The court disagrees. As set forth above, plaintiff's complaint sufficiently alleges that Howell did suffer from a particular vulnerability to suicide. A change in policies and practices could have impacted him and the treatment he received. Thus, defendant's argument fails, and it will not be dismissed on this ground.

## III. Conditions of Confinement Claim

Count III of plaintiff's complaint raises a conditions of confinement cause of action against all defendants. (Doc. 1, Compl. ¶¶ 103-109). The gist of this claim is that the conditions in the RHU were so barbarous that they rise to the level of a violation of the Eighth Amendment's prohibition of cruel and unusual punishment. Defendant MHM seeks dismissal of this cause of action on the basis that plaintiff's complaint does not support such a claim.

There is "no static test by which courts determine whether conditions of confinement are cruel and unusual. Rather, what constitutes cruel and unusual punishment is measured by the evolving standards of decency that mark the progress of a maturing society." Young v. Quinlan, 960 F.2d 351, 359 (3d Cir. 1992) (citing Rhodes v. Chapman, 452 U.S. 337, 346 (1981)). Defendant MHM argues that Howell's rights were not violated simply because he was placed in the RHU/solitary confinement. The law provides that the mere allegation that a prisoner was placed in restricted housing does not violate civilized standards of humanity and decency. See Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997). Here, however, plaintiff alleges more than mere placement in the RHU. The conditions in RHU are alleged to have been cruelly substandard. The RHU cells are small, dark, and dirty. The cells have stains on the walls, dirt everywhere, no windows, and minimal air circulation. (Doc. 1, Compl. ¶ 33). The water that

comes out of the sink and showers is rust colored and undrinkable. (Id.) As a prisoner in RHU, Howell was forced to stay in his cell alone and isolated for 23 to 24 hours a day. (Id. ¶ 34). He was subjected to extreme deprivations of social interaction and environmental stimulation. He also encountered abusive staff and inadequate to non-existent mental health care. (Id.) Because plaintiff has alleged more than mere placement in restricted housing, but also the inhuman conditions in these cells and lack of medical care, plaintiff's conditions of confinement claim will not be dismissed. See Thomas v. Rosemeyer, 199 F. Appx. 195 (3d Cir. 2006) (explaining that a prisoner's claim that he was placed in the RHU alone without allegations of deprivation of food, clothing, sanitation, shelter, medical care or personal safety is insufficient to assert an Eighth Amendment cruel and unusual punishment claim). Accordingly, plaintiff's Eighth Amendment claim will not be dismissed on this ground.

Defendant MHM next argues that to be liable for the conditions of confinement claim, it would have had to been aware of the violation. Here, according to the defendant the complaint fails to allege that MHM was aware of plaintiff's placement in the RHU. The court disagrees. The complaint discusses Defendant Temeka Austin, who was employed by the Pennsylvania Department of Corrections *or* Defendant MHM (Doc. 1, Compl. ¶ 15). A week before his suicide, Austin evaluated Howell and knew he was having issues with being

housed in the RHU. (Id. ¶ 38). That knowledge might be ascribed to Defendant MHM, if she is indeed an MHM employee.

Regardless, as the entity responsible for providing mental health treatment to Howell it seems plausible that MHM would know that he had been housed in RHU because he had been there for approximately two months in total. Discovery may reveal that MHM did not in fact know, but for purposes of a motion to dismiss, plaintiff has alleged sufficient facts to infer MHM's knowledge of Howell's placement in the RHU. Accordingly, the conditions of confinement claim against MHM will not be dismissed.

**Conclusion**

For the reasons set forth above, Defendant MHM's motion for partial dismissal of plaintiff's complaint will be denied. An appropriate order follows.

Date: 6/3/24

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court